IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

CASE NO.: 23-11759
_____

**CHRISTIN BILOTTI**,

*Petitioner-Appellant,*

v.

**FLORIDA DEPARTMENT OF CORRECTIONS**,

*Respondent-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA,
CASE NO.: 0:22-CV-62068-RAR
_____

**INITIAL BRIEF OF
PETITIONER-APPELLANT**

Matthew R. McLain, Esquire
Florida Bar No. 98018
MCLAIN LAW, P.A.
2170 West State Road 434
Suite 216
Longwood, Florida 32779
(T) 407.792.3930
(F) 407.613.2757
Matthew@McLainLaw.com
*Counsel for Christin Bilotti*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1, Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement. Undersigned counsel for CHRISTIN BILOTTI hereby certifies that to the best of her knowledge the following is a complete list of those who have interest in this case.

Arce, Eddie (Witness)

Bilotti, Christin (Appellant)

Bilotti, Michael (Co-Defendant)

Bilotti, Louise (Witness)

Bober, The Honorable Bernard I. (17th Circuit Judge)

Bogenschutz, David (Defense Counsel)

Canady, The Honorable Charles T. (Justice Florida Supreme Court)

Cohen, Herbert (Witness)

Conner, The Honorable Burton C. (Fourth District Judge)

Corbin, Richard (Witness)

Gerber, The Honorable Jonathan D. (Fourth District Judge)

Guzman, Jessica (Witness)

Haddad, Fred (Defense Counsel)

Haughwout, Carey (Public Defender)

Herbert, Mara C. (Assistant Public Defender)

Jacks, Jesse (Witness)

Juste, Gretude (Witness)

Kadosh, Michael (Witness)

Klingensmith, The Honorable Mark W. (Fourth District Judge)

Labarga, The Honorable Jorge ([former] Chief Justice Florida Supreme Court)

Larghi, Officer Mark (Witness)

Lawson, The Honorable C. Alan (Justice Florida Supreme Court)

Leone, Sgt. Mark (Witness)

Levenson, The Honorable Jeffrey R. (17th Circuit Judge)

Levine, The Honorable Spencer D. (Fourth District Judge)

Martinez, Mayrieta (Witness)

Martinez, Vanessa (Witness)

May, The Honorable Melanie G. (Fourth District Judge)

McLain, Matthew Raul (Defense Counsel)

Mishkin, Samuel (Witness)

Moody, Ashley (Attorney General)

Muniz, The Honorable Carlos G. (Chief Justice Florida Supreme Court)

Pacchiana, John (Co-Defendant)

Palazzola, Wayne (Witness)

Patti, III., Paul (Senior Assistant Attorney General)

Rojas, Richard (Victim)

Rossman, Gregg ([former] Special Assistant State Attorney)

Ruiz II, The Honorable Rodolfo A. (US District Judge)

Schulman, Sasha A. ([former] Assistant State Attorney)

Silvershein, Joel (Assistant State Attorney)

Strauss, The Honorable Jared M. (U.S. Magistrate Judge)

Surber, Melanie Dale ([former] Senior Assistant Attorney General)

Tate, Shari (Assistant State Attorney)

Talley, Kenaz (Witness)

Tillman, Holly (Witness)

Warner, The Honorable Martha C. (Fourth District Judge)

Yaeger, Officer Jeffrey (Witness)

*/s/ Matthew R. McLain*
Matthew R. McLain, Esquire

## STATEMENT REGARDING ORAL ARGUMENT

This Court must decide whether the district erred by denying the district court's denial of Bilotti's first two 28 U.S. Code § 2254 claims. Oral argument will substantially assist the Court in resolving the claims.

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................

TABLE OF CITATIONS ....................................................................................

STATEMENT OF JURISDICTION ........................................................................

STATEMENT OF THE ISSUES ...........................................................................

SUPPLEMENTAL STATEMENT OF THE CASE ....................................................

SUMMARY OF THE ARGUMENT ......................................................................

ARGUMENT .................................................................................................

   I.   WHETHER, IN DENYING BILOTTI'S CLAIM THAT TRIAL COUNSEL FAILED TO PROPERLY PRESERVE AN ISSUE FOR APPEAL, RELATED TO THE STATE'S ALLEGEDLY IMPROPER USE OF A PEREMPTORY STRIKE TO REMOVE A POTENTIAL JUROR FROM THE VENIRE, THE STATE COURT REASONABLY APPLIED *STRICKLAND V. WASHINGTON*, 466 U.S. 668 (1984), IN CONCLUDING THAT SHE COULD NOT ESTABLISH PREJUDICE?......

     A. Standard of Review............................................................................

     B. Argument on the Merits.....................................................................

  II.  WHETHER, IN REJECTING BILOTTI'S CLAIM THAT TRIAL COUNSEL FAILED TO OBJECT TO THE JURY INSTRUCTIONS, THE STATE COURT REASONABLY FOUND THAT SHE DID NOT DEMONSTRATE THAT THE JURY INSTRUCTIONS WERE ERRONEOUS?..............................................................................

     A. Argument on the Merits.....................................................................

CONCLUSION ..............................................................................................

CERTIFICATE OF SERVICE..............................................................................

CERTIFICATE OF COMPLIANCE .......................................................................

# TABLE OF CITATIONS

**Cases**

*Allison v. State*, 179 So. 3d 470 (Fla. 4th DCA 2015)...............................................41

*Batson v. Kentucky*, 476 U.S. 79 (1986)......................................................*passim*

*Brewer v. Taylor* , 2017 WL 1160573 (D. Or. Mar. 28, 2017) ...............................25

*Burdge v. Belleque* , 290 Fed.Appx. 73 (9th Cir. 2008) ........................................25

*Carratelli v. State*, 961 So. 2d 312 (Fla. 2007)........................................................24

*Carrateli v. Stepp*, 382 F. App'x 829 (11th Cir. 2010) ..........................................28

*Chatom v. White,* 858 F. 2d 1479 (11th Cir. 1988)....................................................7

*Cirelli v. Ent*, 885 So. 2d 423, 427 (Fla. 5th DCA 2004) ........................................41

*Commonwealth v. Little*, 246 A.3d 312 (Superior Court Pennsylvania 2021) ........24

*Cornejo v. State*, 892 So. 2d 1160 (Fla. 4th DCA 2005)....................................33, 39

*Davis v. Sec'y for Dept. of Corr.*, 341 F.3d 1310 (11th Cir. 2003) .................*passim*

*Dorsey v. Chapman*, 262 F. 3d 1181 (11th Cir. 2001) ..............................................9

*Hardy v. Chappell*, 849 F.3d 803 (9th Cir. 2017)....................................................29

*Hauser ex rel. Crawford v. Moore*, 223 F. 3d 1316 (11th Cir. 2000) ....................10

*Hedgeman v. State*, 661 So. 2d 87 (Fla. 2d DCA 1995)..................................*passim*

*Hill v. Lockhart*, 474 U.S. 52 (1985) ......................................................................26

*Jamerson v. State*, 677 So. 2d 1299 (Fla. 4th DCA 1996) ................................ 40-41

*Kohn v. Cain* , 2016 WL 1564138, (W.D. La. Jan. 14, 2016)................................25

*McBride v. Sharpe*, 25 F. 3d 962 (11th Cir. 1994) ..................................................10

*McClamrock v. State*, 327 So. 2d 780 (Fla. 3d DCA 1975) ....................................41

*McMann v. Richardson,* 397 U.S. 759 (1970) ..........................................7

*Miles v. United States*, 103 U.S. 304 (1880)..........................................16

*Miller-El v. Cockrell,* 537 U.S. 322 (2003) ...........................................10

*Miller-El v. Dretke*, 545 U.S. 231 (2005) ..............................................11

*Mobley v. Sec'y, Fla. Dep't of Corr.*, 825 F. App'x 651 (11th Cir. 2020)..............28

*Morgan v. Illinois*, 504 U.S. 719 (1992)................................................16

*Nix v. Whiteside,* 475 U.S. 157 (1986).................................................8

*Pacchiana v. State*, 240 So. 3d 803 (Fla. 4th DCA 2018)............................2, 16, 23

*Parker v. Head*, 244 F. 3d 831 (11th Cir. 2001).......................................10

*Patterson v. Lewis* , 2018 WL 4941120, (D.S.C. June 21, 2018)..........................25

*Powers v. Ohio*, 499 U.S. 400 (1991) ...................................................12

*Roe v. Flores-Ortega*, 528 U.S. 470 (2000).............................................26

*Shaw v. Dwyer*, 555 F. Supp. 2d 1000, (E.D. Mo. 2008) ................................25

*Snyder v. Louisiana,* 552 U.S. 472 (2008) .............................................11

*St. Fort v. Post*, 902 So. 2d 244 (Fla. 4th DCA 2005)..................................40

*State v. Pacchiana*, 289 So. 3d 857 (Fla. 2020)....................................3, 15, 23, 32

*Stoute v. State*, 987 So. 2d 748 (Fla. 4th DCA 2008) ..................................42

*Strickland v. Washington,* 446 U.S. 668 (1984) ...............................*passim*

*Taylor v. Louisiana*, 419 U.S. 522 (1975) .........................................11, 26

*United States v. Brown*, 996 F. 3d 1171 (11th Cir 2021) ..............................16

*United States v. Cronic,* 466 U.S. 648 (1984) .........................................8

*United States* v. *Morrison,* 449 U.S. 361 (1981) .....................................8

*Ward v. Hall*, 592 F. 3d 1144 (11th Cir. 2010) .......................................7

*Welch v. State*, 992 So. 2d 206 (Fla. 2008)..............................................................12

*Williams v. Taylor*, 529 U.S. 362 (2000) ...................................................................9

*Wright v. State*, 402 So. 2d 493 (Fla. 3d DCA 1981 ..............................................40

## Other Authorities

28 U.S. Code § 2254 ........................................................................................*passim*

28 U.S. Code § 2253 ..................................................................................................1

Fla. R. Crim. P. 3.850 .................................................................................3, 17, 36

U.S. Const. 6th Amend ...................................................................................11, 26

## STATEMENT OF JURISDICTION

The Court of Appeals has jurisdiction over this appeal pursuant to Title 28 of the United States, Section 2253, which gives this Court jurisdiction over final orders in section 2254 proceedings after the issuance of a certificate of appealability.

## STATEMENT OF THE ISSUE

I.    WHETHER, IN DENYING BILOTTI'S CLAIM THAT TRIAL COUNSEL FAILED TO PROPERLY PRESERVE AN ISSUE FOR APPEAL, RELATED TO THE STATE'S ALLEGEDLY IMPROPER USE OF A PEREMPTORY STRIKE TO REMOVE A POTENTIAL JUROR FROM THE VENIRE, THE STATE COURT REASONABLY APPLIED *STRICKLAND V. WASHINGTON*, 466 U.S. 668 (1984), IN CONCLUDING THAT SHE COULD NOT ESTABLISH PREJUDICE?

II.   WHETHER, IN REJECTING BILOTTI'S CLAIM THAT TRIAL COUNSEL FAILED TO OBJECT TO THE JURY INSTRUCTIONS, THE STATE COURT REASONABLY FOUND THAT SHE DID NOT DEMONSTRATE THAT THE JURY INSTRUCTIONS WERE ERRONEOUS?

## STATEMENT OF THE CASE

The State charged Bilotti by indictment with first-degree murder and conspiracy to commit first-degree murder of Richard Rojas along with co-defendants Michael Bilotti, her father, and John Pacchiana. Ex. 2.[1] Bilotti was 17

---

[1] As in the report and recommendation, citations to exhibits (e.g., Ex. 2) refer to exhibits contained in the Appendix contained at [DE 8-1]. When specific pages of

years old at the time of Rojas death. R. 129. The matter proceeded to a joint trial. The State proceeded under a theory that Pacchiana shot and killed Rojas. R. 129-158, 208-218.  Although not present when it occurred, the State argued that Bilotti conspired with her father and Pacchiana to commit the murder and acted as a principal.  The jury found Bilotti not guilty of the conspiracy. Ex. 6. The jury found Bilotti guilty of the lesser included offense of second-degree murder.   The jury found Bilotti's co-defendants guilty of conspiracy and first-degree murder. The trial court sentenced Bilotti to 30 years in prison followed by two years of community control and eight years of probation. Ex. 7, Ex. 8.

Bilotti filed a direct appeal. Ex. 15.  Initially, the Fourth District Court of Appeal reversed for a new trial because it found the trial court erred in allowing a peremptory strike based on religious purposes:

> "Even if the state's strike were 'genuinely' based on the juror's religion, members of a religion that is a cognizable class are also protected under the United States and Florida Constitutions from being systematically struck from juries solely based on their faith."

Ex. 21; *Pacchiana v. State*, 240 So. 3d 803, 813 (Fla. 4th DCA 2018). The State moved the Florida Supreme Court to quash the Fourth District's decision on three grounds: the religion-based objection to the strike was not properly preserved; (2) the Fourth District improperly extended *Batson* to religion; and (3) the Fourth

---

exhibits are cited the citation "R. [page]." is used.  By way of example, "R. 410" refers to page 410 of DE 8-1.

District erroneously concluded that challenging a prospective juror based upon religious test which violates the United States Constitution. Ex. 24. The Florida Supreme Court quashed the decision by the Fourth District because it found the religion-based objection to the strike was not properly preserved for appeal. *State v. Pacchiana*, 289 So. 3d 857 (Fla. 2020). The Fourth District affirmed Bilotti's judgment and sentence in light of the decision by the Florida Supreme Court. Ex. 29.

Bilotti filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Ex. 39. Bilotti asserted two claims of ineffective assistance of counsel and a constitutional challenge to her sentence. The trial court denied Bilotti's request for relief. Ex. 41-44. Bilotti took an appeal of the denial. Ex. 45. The Fourth District affirmed without providing written explanation. Ex. 48.

Bilotti filed a petition pursuant to 28 U.S.C. § 2254. [D.E. 1]. Within the petition, Bilotti argued that she was entitled to federal habeas relief because defense counsel provided ineffective assistance by failing to (1) preserve a religion-based objection to the strike of a juror and (2) argue the jury was erroneously instructed on the charge of second-degree murder when the trial court told the jury that the State did not need to prove Bilotti knew her co-defendants intended to murder Rojas. Bilotti challenged the application/reasonableness of

state courts' findings that she was not entitled to relief as a result of defense counsel's ineffective assistance of counsel.

The federal district court, after receiving a response, a reply, a report and recommendation, and objections to report and recommendation, denied Bilotti's request for federal habeas relief and declined to provide a certificate of appealability. [D.E. 6, 10, 12-14].

Bilotti filed a notice of appeal within 30 days of the denial. [D.E. 15]. Bilotti requested that this Court issue a certificate of appealability as it related to the district court's denial of her § 2254 claims.

This Court granted a certificate of appealability as to Bilotti's first two § 2254 claims. This Court framed the issues to be addressed as follows:

I. WHETHER, IN DENYING BILOTTI'S CLAIM THAT TRIAL COUNSEL FAILED TO PROPERLY PRESERVE AN ISSUE FOR APPEAL, RELATED TO THE STATE'S ALLEGEDLY IMPROPER USE OF A PEREMPTORY STRIKE TO REMOVE A POTENTIAL JUROR FROM THE VENIRE, THE STATE COURT REASONABLY APPLIED STRICKLAND V. WASHINGTON, 466 U.S. 668 (1984), IN CONCLUDING THAT SHE COULD NOT ESTABLISH PREJUDICE?

II. WHETHER, IN REJECTING BILOTTI'S CLAIM THAT TRIAL COUNSEL FAILED TO OBJECT TO THE JURY INSTRUCTIONS, THE STATE COURT REASONABLY FOUND THAT SHE DID NOT DEMONSTRATE THAT THE JURY INSTRUCTIONS WERE ERRONEOUS?

This brief addressing the above issues follows.

## SUMMARY OF THE ARGUMENT

This Court should grant Bilotti habeas relief in the form of directing her release from state custody unless granted a new trial, an opportunity to develop the claims at a hearing with the federal district court, or other appropriate relief.

Regarding the first claim, the state court unreasonably applied *Strickland* to find that Bilotti was unable to establish prejudice because she could not demonstrate that an actual biased juror sat on the jury. Bilotti's claim, however, concerned defense counsel's failure to properly preserve for direct appeal the State's use of a peremptory strike to remove a juror due to their religion. *Strickland* requires that a court determine prejudice based on the harm caused by defense counsel's deficient performance. This Court's decision in *Davis* correctly provides the *Strickland* prejudice standard for Bilotti's claim, "[W]hen a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." If the correct *Strickland* prejudice standard was applied to Bilotti's claim, then no reasonable court would have concluded that Bilotti could not establish her claim of ineffective assistance of counsel. Indeed, the Fourth District initially granted Bilotti a new trial based on the State's improper striking of the juror for her religion. The Florida Supreme Court only quashed the

Fourth District's decision because defense counsel failed to properly preserve the issue for direct appeal.

As to the second claim, state court unreasonably found that Bilotti could not establish ineffective assistance of counsel because she failed to demonstrate that the jury instructions for second-degree murder were erroneous by misplacing reliance on *Hedgeman*. Bilotti was correct to rely on *Hedgeman*. *Hedgeman* provides that, in Florida, to sustain a second-degree murder conviction as a principal for a murder committed by another, the prosecution must prove that the defendant knew the person that killed the victim intended to kill the victim and did some act to assist the other person actually committing the crime. If evidence is insufficient to sustain a conviction, it then must follow that a jury cannot be instructed that it can convict a defendant based on insufficient evidence. No reasonable court would have concluded that Bilotti could not establish her claim of ineffective assistance of counsel had it recognized that Bilotti did not misplace reliance on *Hedgeman* and defense counsel should have objected to the jury instructions that allowed Bilotti to be convicted of second-degree without requiring the prosecution to prove that she knew of her co-defendants' intent to kill the victim. Indeed, a post-verdict correspondence revealed that a juror did not believe that Bilotti knew of her co-defendants' intent to kill the victim.

**ARGUMENT**

I.    **WHETHER, IN DENYING BILOTTI'S CLAIM THAT TRIAL COUNSEL FAILED TO PROPERLY PRESERVE AN ISSUE FOR APPEAL, RELATED TO THE STATE'S ALLEGEDLY IMPROPER USE OF A PEREMPTORY STRIKE TO REMOVE A POTENTIAL JUROR FROM THE VENIRE, THE STATE COURT REASONABLY APPLIED *STRICKLAND V. WASHINGTON*, 466 U.S. 668 (1984), IN CONCLUDING THAT SHE COULD NOT ESTABLISH PREJUDICE?****

**A. Standard of Review[2]**

This Court reviews *de novo* the district court's grant or denial of a habeas corpus petition that asserts ineffective assistance of counsel claims. *Ward v. Hall*, 592 F. 3d 1144, 1155 (11th Cir. 2010) (citations omitted).

The Sixth Amendment right to counsel implicitly includes the right to effective assistance of counsel. *See McMann v. Richardson,* 397 U.S. 759, 771 n.14 (1970); *Chatom v. White,* 858 F. 2d 1479, 1484 (11th Cir. 1988). The familiar and established test utilized by courts in analyzing ineffective assistance of counsel claims is as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.
>
> Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot

---

[2] The same standard of review applies to the second issue.

7

> be said that the conviction or death sentence resulted from a breakdown in the adversarial process that renders the result unreliable.

*Strickland v. Washington,* 446 U.S. 668, 687 (1984). The United States Supreme Court emphasized that the Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." 466 U.S. at 684. *See also Nix v. Whiteside,* 475 U.S. 157, 175 (1986) (noting that under *Strickland,* the "benchmark" of the right to counsel is the "fairness of the adversary proceeding"); *United States v. Cronic,* 466 U.S. 648, 653 (1984) ("Without counsel, the right to a trial would be of little avail") (internal quotation marks and footnote omitted); *United States* v. *Morrison,* 449 U.S. 361, 364 (1981).

A court deciding a claim of ineffective assistance of counsel must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* at 690.

A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine

whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. While strategic decisions made after thorough review of law and facts are virtually unchallengeable, patently unreasonable decisions can be challenged if no competent attorney would have chosen it. *Dorsey v. Chapman*, 262 F. 3d 1181, 1186 (11th Cir. 2001).

Bilotti's request for federal habeas corpus relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). Bilotti submits that habeas relief may be granted with respect to a claim adjudicated on the merits in state court if the claim:

(1) [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court clarified the nature of habeas review as set out in section 2254. The Supreme Court explained:

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13.

As to findings of fact under 28 U.S.C. § 2254(d), federal courts determine whether the state court's finding was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A state court's determination of the facts shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Hauser ex rel. Crawford v. Moore*, 223 F. 3d 1316, 1323 (11th Cir. 2000). However, the statutory presumption of correctness applies only to findings of fact made by the state court, not mixed determinations of law and fact. *See Parker v. Head*, 244 F. 3d 831, 836 (11th Cir. 2001); *McBride v. Sharpe*, 25 F. 3d 962, 971 (11th Cir. 1994).

In *Miller-El v. Cockrell,* 537 U.S. 322, 341-42 (2003), the Supreme Court stated:

AEDPA does not require petitioner to prove that a decision is objectively unreasonable by clear and convincing evidence. The clear and convincing evidence standard is found in § 2254( e )( 1 ), but that subsection pertains only to state-court determinations of factual issues, rather than decisions. Subsection ( d)(2) contains the

unreasonable requirement and applies to the granting of habeas relief

....

In other words, the "reasonableness" standard does not apply to determinations of factual issues. Bilotti is not required to prove that the state court's factual findings were unreasonable, only that they were rebutted by clear and convincing evidence. "A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." *Id.* at 340.

## B. Argument on the Merits

The United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment governs the exercise of peremptory challenges in a criminal trial, and that the "defendant does have the right to be tried by a jury whose members are elected pursuant to nondiscriminatory criteria." *Batson v. Kentucky*, 476 U.S. 79, 85-86 (1986). This prohibition against the discriminatory use of peremptory challenges also rests on the constitutional right to an impartial jury drawn from a representative cross-section of the community. U.S. Const. 6th Amend.; *Batson*, 476 U.S. 89; *Taylor v. Louisiana*, 419 U.S. 522, 531 (1975). Since *Batson*, the Court has repeatedly reiterated its commitment to nondiscriminatory jury selection procedures. *See, e.g., Miller-El v. Dretke*, 545 U.S. 231 (2005); *Snyder v. Louisiana,* 552 U.S. 472 (2008).

Individual jurors, as well as the defendant, have a right to nondiscriminatory jury selection procedures, free from discrimination. *Powers v. Ohio*, 499 U.S. 400 (1991); *Welch v. State*, 992 So. 2d 206 (Fla. 2008). The discriminatory exclusion of prospective jurors is not subject to a harmless error review, as the United States Supreme Court has reversed convictions without even considering whether the improper exclusion of jurors had any effect on the outcome of the trial. *See Powers*, 499 U.S. at 416; *Batson*, 476 U.S. at 100.

During jury selectin in this case, the State used a peremptory challenge to strike prospective juror Beech. The following then transpired:

> [DEFENSE COUNSEL[3]]: *Can we get a race neutral reason?* (Emphasis supplied.)
>
> [THE STATE]: She's a Jehovah Witness. I've never had one say, and I highlighted it, they've always said they can't sit in judgment. She never brought it up.
>
> [DEFENSE COUNSEL]: She did.
>
> [THE STATE]: No, but she put at the bottom that she's a Jehovah Witness, that gives me pause.
>
> [DEFENSE COUNSEL]: *That's a religious based strike.* (Emphasis supplied.)
>
> [THE STATE]: You can say that but that's—for 20 years, [defense counsel for codefendant] knows, any one of them that's been practicing they've always said that. Now maybe she's less—

---

[3] For purposes of this section, Bilotti refers to defense counsel and defense counsel for the co-defendants as defense counsel. All joined in and adopted the objection.

[DEFENSE COUNSEL]: She reads Jehovah stuff, she doesn't say she's a practicing Jehovah Witness.

THE COURT: Let's bring in [the prospective juror].
....
[Prospective juror], if you wouldn't mind having a seat in the front row, we have a question I want to ask you. You indicated in your questionnaire that you're a Witness, Jehovah Witness.

[PROSPECTIVE JUROR]: Yes.

THE COURT: How would that affect your ability to be fair in this case? We've had them before. Do you have any religious beliefs that would prevent you from being fair and impartial in this case?

[PROSPECTIVE JUROR]: If the evidence that's provided to me is clear cut and concise I would be able to. If my ruling wouldn't—

THE COURT: In light of my questions, [prosecutor]?

[THE STATE]: So there's no prohibition, and honestly I don't know enough about religion, and I don't mean that disrespectfully, but I want to make sure that you as an individual, whatever your beliefs are, there's nothing preventing you from sitting in judgment of a case, because that's really what you're doing, you're judging whether we've proven our case or not. You can do that?

[PROSPECTIVE JUROR]: I can, and before I believe it was Judge Levenson who said that we would not be making the sentencing.

THE COURT: How do you feel about that?

[PROSPECTIVE JUROR]: I'm okay with that.

THE COURT: Okay.

[THE STATE]: The fact that you said that, if you were involved—I'm taking it to mean, and maybe I'm wrong, if you're involved in sentencing then you are saying you wouldn't be sitting?

[PROSPECTIVE JUROR]: Then I would say no.

[THE STATE]: You realize your decision here if, in fact, you're to vote—

[DEFENSE COUNSEL]: I object to any further questions with this juror.

THE COURT: Overruled.

[THE STATE]: If, in fact, you know, you vote that it's proven, you have nothing to do with sentencing but the Judge would based on your decision saying it's proven.

[PROSPECTIVE JUROR]: If the State gives me all the evidence that I can see where you can show me that these individuals did this act, then I—can make a decision on that and based on the decision that you provide me.

[THE STATE]: Well, we don't provide you with a decision.

[PROSPECTIVE JUROR]: Well, the evidence that I'm given.

[THE STATE]: Yes, ma'am. You said all the evidence. You can do that beyond a reasonable doubt?

[PROSPECTIVE JUROR]: Yes.

[THE STATE]: The reason. I'm asking, I want to make sure— whatever the Judge says the law is—

[PROSPECTIVE JUROR]: Right.

[THE STATE]: Okay.

THE COURT: Any questions from the Defense?

[DEFENSE COUNSEL]: None.
....

THE COURT: Thank you, ma'am. Record reflect that the juror's [sic] have left the courtroom and the door is closed. What say you, [prosecutor]?

[THE STATE]: My reason is unchanged, I don't believe I can meet her burden. I can meet my burden beyond a reasonable doubt but I cannot meet her burden and that's a concern to me and it has nothing to do with religion or anything else.

THE COURT: Let me hear from the Defense.

[DEFENSE COUNSEL]: We object to her being challenged for cause, then *he's going to have to come up with a race neutral reason.* (Emphasis supplied.)

[THE STATE]: This is a peremptory.

THE COURT: Over the Defense objection I find that the record sufficiently supports a race neutral reason because of the concern about her responses to the questions. So over your objection it'll be granted.

*Pacchiana*, 289 So. 3d at 858-860.

After the trial court permitted the State to use a peremptory challenge to strike the prospective juror, defense counsel motioned to strike the jury panel based on their belief that the trial court was depriving them of a juror they thought should be seated. *Id*. at 860.

Five days after the prospective juror was excused but before the jury was sworn, defense counsel filed a written motion for mistrial and to select a new jury. *Id*. At the hearing on the motion, the State argued that the motion was untimely, pointing out that the defendants were now attempting to make a separate

religion-based objection to the use of the strike in addition to his previous race-based objection. *Id.* The trial court noted that defense counsels were seeking to extend *Batson*—in which the United States Supreme Court held that the Equal Protection Clause prohibits race-based peremptory challenges—to religion. *Id.* The trial court declined the invitation to extend *Batson* to religion, maintained its earlier ruling that the strike was permissible, and stated that all of the objections were "duly noted and preserved at this time." *Id.*

On appeal, the Fourth District Court of Appeal concluded that the trial court erred in allowing the peremptory strike of the prospective juror. *Id.* The district court found that "Even if the state's strike were 'genuinely' based on the juror's religion, members of a religion that is a cognizable class are also protected under the United States and Florida Constitutions from being systematically struck from juries solely based on their faith." *Pacchiana*, 240 So. 3d at 813.[4] *Id.* at 860-861.

The State moved for the Florida Supreme Court to quash the Fourth District decision on three grounds: the religion-based objection to the strike was not

---

[4] The Eleventh Circuit in *United States v. Brown*, 996 F. 3d 1171 (11th Cir 2021), as is similarly discussed by the Fourth District Court of Appeal, acknowledges that a juror should only be removed for religious purposes if their religion would not permit the juror to complete the jury service in accordance with the law. The Eleventh Circuit cited to the Court's decisions in *Morgan v. Illinois*, 504 U.S. 719 (1992) and *Miles v. United States*, 103 U.S. 304 (1880). Nothing in the record of this case suggests that religion would have prevented juror Beech from completing her task as a juror in accordance with the law.

properly preserved; (2) the Fourth District improperly extended *Batson* to religion; and (3) the Fourth District erroneously concluded that challenging a prospective juror based upon religious test which violates the United States Constitution. *Id*. at 861.

The Florida Supreme Court quashed the decision by the Fourth District because the religion-based objection to the strike was not properly preserved for direct appeal. *Id*.

In a postconviction proceeding pursuant to Florida Rule of Criminal Procedure 3.850, Bilotti asserted that defense counsel provided ineffective assistance of counsel by failing to properly preserve the issue related to the State's religion-based strike for direct appeal as found by the Florida Supreme Court. R. 390-401. Bilotti asserted that she suffered *Strickland* prejudice as a result of defense counsel's deficient performance because her direct appeal would have been successful and afforded a new trial had the issue been properly preserved by defense counsel. Indeed, the Fourth District, under the then mistaken belief that the issue had been preserved by defense counsel for appellate review, reversed and remanded for a new trial:

> Even if the state's strike were "genuinely" based on the juror's religion, members of a religion that is a cognizable class are also protected under the United States and Florida Constitutions from being systematically struck from juries solely based on their faith. Appellant has a right to a fair and impartial jury panel where the state does not exclude members of a religion in the absence of competent

substantial evidence that the potential juror cannot be fair and impartial due to her views related to her membership in that religion.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the Equal Protection Clause prohibits race-based peremptory challenges. Over the years, courts have expanded *Batson* to other peremptory challenges based on the Equal Protection Clause. The United States Supreme Court extended the equal protection analysis to gender in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).[1]

Similarly, the Florida Supreme Court previously found that Hispanics were a "cognizable class" of people, requiring an ethnic-neutral reason before excusing a juror. *State v. Alen*, 616 So.2d 452, 454 (Fla. 1993). That court applied a two-part test to determine if a group constitutes a cognizable class: whether the group's population is large enough to be recognized as an identifiable group and whether that group has internal group cohesiveness. *Id.*

The Third District, following the same line of cases, held that a preemptory challenge of a Jewish venireperson based solely upon her religion was unconstitutional. *Joseph v. State*, 636 So.2d 777 (Fla. 3d DCA 1994). The court found that members of the Jewish religion were a cognizable class under the standard articulated in *Alen*.

The *Joseph* court determined that members of the Jewish faith met the two-prong test and concluded that striking members of the Jewish faith violated Article 1, Section 16 of the Florida Constitution, which guarantees the defendant an impartial jury. *Id.* at 781.

In the present case, as in *Joseph*, members of the Jehovah's Witnesses would also appear to meet the two-prong test as a recognizable group with internal group cohesiveness. *See also State v. Gilmore*, 103 N.J. 508, 511 A.2d 1150, 1159 n.3 (1986) ("[A]t minimum, cognizable groups include those defined on the basis of religious principles, race, color, ancestry, national origin, and sex (all of which are suspect or semi-suspect classifications triggering strict or intermediate scrutiny under federal equal protection analysis[.) ]")

(citing *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

This court has also found that striking a potential juror due to his or her religious faith is unconstitutional. In *Olibrices v. State*, 929 So.2d 1176, 1180 (Fla. 4th DCA 2006), our court found that the potential juror's "membership within the objectively discernible group of Pakistani Muslims" was the basis of the exercise of a peremptory challenge. We concluded that "whether the juror was challenged because he is of Pakistani origin or because his religious belief is Muslim, it would be a *Neil Slappy* violation to exercise a peremptory challenge of him on either account." *Id.* Similarly, in the present case, the potential juror is a member of an "objectively discernible group," that being the Jehovah's Witnesses.

*Rodriguez v. State*, 826 So.2d 494 (Fla. 4th DCA 2002), and *Happ v. State*, 596 So.2d 991 (Fla. 1992), which are cited by the dissent, are distinguishable. The peremptory strike in *Rodriguez* was based on the prospective juror's occupation and not based on membership in a particular religious group. 826 So.2d at 495. *Happ* is also distinguishable because in that case, unlike in the instant case, the defendant did not contest the reasons given by the state for the strike. 596 So.2d at 996.

The dissent also relies on the trial court's superior vantage point as justification for affirmance. Although it is generally true that we should rely on the superior vantage point of the trial court, that axiom does not hold true where the trial court has ratified the state's erroneous and unconstitutional strike of a prospective juror based on religious membership alone. *See Frazier*, 899 So.2d at 1175 ("When stereotypical presumptions are based on a juror's nationality or ancestral home and proffered as a reason for a peremptory strike, discrimination in jury selection has occurred as a matter of law."); *Foster v. State*, 929 So.2d 524, 537 (Fla. 2006) (stating that deference to a trial court's superior vantage point applies only if its decision is supported by competent substantial evidence).

Other jurisdictions have also declared invalid strikes based on religious affiliation. For instance, in *State v. Hodge*, 248 Conn. 207, 726 A.2d 531, 550 (1999), the Connecticut Supreme Court held that

"a peremptory challenge based on a venireperson's religious affiliation is unconstitutional." The court explained that "[a]lthough one's religious *beliefs* may render a prospective juror unsuitable for service in a particular case, one's religious *affiliation*, like one's race or gender, bears no relation to that person's ability to serve as a juror." *Id.* at 553.

Although those who argue against extending *Batson* often cite to *Davis*, as noted above, the Minnesota Supreme Court actually recognized that striking a juror based solely on his affiliation with the Jehovah's Witnesses would not rebut the prima facie case of racial bias. *See Davis*, 504 N.W.2d at 772. This is the exact situation presented in the instant case.

Interestingly, although the United States Supreme Court denied the petition for review by certiorari in *Davis*, Justice Thomas, joined by Justice Scalia, dissented from the denial of certiorari. *Davis v. Minnesota*, 511 U.S. 1115, 114 S.Ct. 2120, 128 L.Ed.2d 679 (1994). Justice Thomas, citing to *J.E.B.*, disputed the Minnesota Supreme Court's conclusion that "*Batson's* equal protection analysis applies solely to racially based peremptory strikes." *Id.* at 2121. Responding to the majority's denial of the writ for certiorari, the dissent stated:

Indeed, given the Court's rationale in *J.E.B.*, no principled reason immediately appears for declining to apply *Batson* to any strike based on a classification that is accorded heightened scrutiny under the Equal Protection Clause. ... *J.E.B.* would seem to have extended *Batson's* equal protection analysis to all strikes based on the latter category of classifications-a category which presumably would include classifications based on religion.

*Id.*

Justice Thomas correctly suggested that the rationale of *Batson* and *J.E.B.* should be extended. Based on *Alen*, *Joseph*, and this court's decision in *Olibrices*, the trial court clearly erred in allowing the prospective juror to be struck from service based on her membership in a religious group.

Thus, the state's strike was either pretextual and entirely based on race, or the state's strike was not pretextual and entirely based on religion despite the lack of competent substantial evidence that the prospective juror's religion would influence her decision-making as a juror. Either way, it violates the United States and Florida Constitutions.

### III. *Strike Violates "Religious Test"*

Finally, striking a potential juror from jury service based solely on membership in a religion, no matter what the juror says during voir dire, is an impermissible "religious test" in violation of the United States and Florida Constitutions. Where the state decides to strike the juror due to her faith, even before discussing whether her faith would improperly influence her decision, it becomes the state's de facto position that a member of that religion can never satisfy the state's concerns and effectively can never serve on a jury. Likewise, the trial court's statement—that allowing a Jehovah's Witness on a jury would be "malpractice"—effectively prohibits members of that religious group from being able to serve as a juror.

Article VI, Clause 3 of the United States Constitution states that "no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States." The United States Supreme Court stated that "[w]e repeat and again reaffirm that neither a state nor the Federal Government can constitutionally force a person 'to profess a belief or disbelief in any religion.' " *Torcaso v. Watkins*, 367 U.S. 488, 495, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961) (citation omitted). To strike a juror for professing a belief in a religion amounts effectively to a religious test. *See also* Fla. Const. art. I, § 2 ("Basic rights.—... No person shall be deprived of any right because of race, religion, national origin, or physical disability."); Fla. Const. art I, § 3 "Religious freedom.—... There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof.").

The United States Supreme Court has recognized that jury duty is a public trust:

[The jury is] an entity that is a quintessential governmental body, having no attributes of a private actor. The jury exercises the power of the court and of the government that confers the court's jurisdiction.... [T]he jury system performs the critical governmental functions of guarding the rights of litigants and ensuring the continued acceptance of the laws by all of the people.

*Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 624, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). (citation, quotation mark, and alterations omitted). Every person, regardless of his or her religion, should be eligible to serve in this public trust.

Another state that has adopted the rule prohibiting peremptory strikes based on religious affiliation has also found this type of strike violates the religious test doctrine:

Furthermore, to allow the State to use peremptory strikes based on religious affiliation would condition the right to free exercise of religion upon a relinquishment of the right to jury service. *See McDaniel v. Paty*, 435 U.S. 618, 626–29, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978) (invalidating a law that disqualified members of the clergy from holding certain public offices, because it imposed special disabilities on the basis of religious status); *Powers v. Ohio*, 499 U.S. 400, 406–07, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (recognizing the right to serve on a jury as an important democratic right). As the Court stated in *Georgia v. McCollum*, 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), "[i]n our heterogeneous society policy as well as constitutional considerations militate against the divisive assumption-as a per se rule-that justice in a court of law may turn upon the pigmentation of skin, the accident of birth, or the *choice of religion*." *Quoting Ristaino v. Ross*, 424 U.S. 589, 596 n.8, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976) (emphasis added).

*State v. Purcell*, 199 Ariz. 319, 18 P.3d 113, 121–22 (Ariz. Ct. App. 2001).

The framework of our constitutional freedom is based in large part on the protection of the free exercise of religion. Religious liberty can be safeguarded only when every individual can participate in our civil

society regardless of his or her religion. Serving as a juror is one of the highest forms of participation.

Our founders understood that religious tests were inimical to the rights of the individual within a free society:

More sparingly should this praise be allowed to a government, where a man's religious rights are violated by penalties, or fettered by tests, or taxed by a hierarchy. Conscience is the most sacred of all property; other property depending in part on positive law, the exercise of that, being a natural and unalienable right. To guard a man's house as his castle, to pay public and enforce private debts with the most exact faith, can give no title to invade a man's conscience which is more sacred than his castle, or to withhold from it that debt of protection, for which the public faith is pledged, by the very nature and original conditions of the social pact.

James Madison, *Property*, National Gazette, March 27, 1792, available at https://founders.archives.gov/documents/Madison/01-14-02-0238.

In sum, the strike was pretextual and based on race. Even if the strike was not a pretext, then it was based on religion, which is also impermissible. Finally, the strike imposed an unconstitutional religious test.

For all of these reasons articulated above, we reverse and remand for a new                                                                 trial.

*Pacchiana*, 240 So. 3d at 813–16, *decision quashed*, 289 So. 3d 857 (Fla. 2020).

Bilotti relied upon this Court's decision in *Davis* to support her assertion of *Strickland* prejudice, "[W]hen a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable

likelihood of a more favorable outcome on appeal had the claim been preserved." *Davis v. Sec'y for Dept. of Corr.*, 341 F.3d 1310, 1316 (11th Cir. 2003).

The state court denied the claim of ineffective assistance of counsel because it found the standard set forth by this Court in *Davis* did not apply. Ex. 40-41. Instead of relying on *Davis*, the state court relied on the Florida Supreme Court's decision in *Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007), which provides that "prejudice can be shown only where one who was actually biased against the defendant sat as a juror.". The state court determined that Bilotti could not establish that a biased juror sat on the jury.

The state court unreasonably applied *Strickland* to conclude that Bilotti could not establish prejudice. *Strickland* provides that for a defendant to establish prejudice "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Bilotti asserts that, like in *Davis,* the proper *Strickland* prejudice analysis is whether there is a reasonable likelihood that she would have prevailed on appeal but for defense counsel's deficient performance. Other Courts agree. *See, e.g., Commonwealth v. Little*, 246 A.3d 312 (Superior Court Pennsylvania 2021) (applying *Davis* to conclude that defense counsel provided prejudicial ineffective

assistance of counsel when failed to preserve for appeal an objected to and argued evidentiary issue) (citing *Brewer v. Taylor* , 2017 WL 1160573, at *2 (D. Or. Mar. 28, 2017) (granting post-conviction relief on *Davis* grounds and overturning denial of relief because "[t]he proper inquiry should have been whether there was a reasonable likelihood that Petitioner would have prevailed on appeal."); *Shaw v. Dwyer*, 555 F. Supp. 2d 1000, 1010 (E.D. Mo. 2008) (citing approvingly to *Davis* and granting post-conviction relief where trial counsel's error resulted in a loss of a meritorious appeal, explaining that "[t]o require petitioner to show an effect upon his trial in order to establish prejudice is ... factually impossible[.]"); *see also Burdge v. Belleque* , 290 Fed.Appx. 73, 79 (9th Cir. 2008) (holding that trial counsel's failure to preserve a sentencing issue for appeal under Oregon law prejudiced petitioner because the outcome would have been different on appeal); *Patterson v. Lewis* , 2018 WL 4941120, at *11 (D.S.C. June 21, 2018), *report and recommendation adopted* , 2018 WL 4524093 (D.S.C. Sept. 13, 2018) (citing *Davis* for proposition that "to show prejudice from counsel's failure to preserve an issue for appellate review, the petitioner must show the outcome of his appeal would have been different."); *Kohn v. Cain* , 2016 WL 1564138, at *7 (W.D. La. Jan. 14, 2016), *report and recommendation adopted* , 2016 WL 1546783 (W.D. La. Apr. 14, 2016) (citing *Davis* for proposition that "[f]ailing to

preserve a claim for appeal after otherwise raising it effectively rises to the level of deficient performance" of trial counsel).

Bilotti's claim depends on defense counsel's failure to preserve an argument for appeal regarding a violation of a defendant's right to be tried by a jury whose members are elected pursuant to nondiscriminatory criteria and to an impartial jury drawn from a representative cross-section of the community not the bias of a seated juror.  U.S. Const. 6th Amend.; *Batson*, 476 U.S. at 79; *Taylor*, 419 U.S. at 522.  The focus of Bilotti's claim was on defense counsel's failure to preserve the meritorious argument for appeal. Clearly established Federal Law instructs that the prejudice analysis of *Strickland* is not limited to mistakes by trial counsel to the trial itself. *See, e.g. Roe v. Flores-Ortega*, 528 U.S. 470 (2000) (granting habeas relief in the form of a new appeal where trial counsel failed to file a timely notice of appeal because satisfied the framework set forth by *Strickland*); *Hill v. Lockhart*, 474 U.S. 52 (1985) (applying *Strickland* to assess a claim of ineffective assistance of counsel arising out of the plea negotiation process); *Davis*, 341 F. 3d at 1315 ("*Flores-Ortega* [ ]establishes that the prejudice showing required by *Strickland* is not always fastened to the forum in which counsel performs deficiently: even when it is trial counsel who represents a client ineffectively in the trial court, the relevant focus in assessing prejudice may be the client's appeal.").

The prejudice standard provided for in *Davis* correctly examines the harm caused by defense counsel's deficient performance.

The *Carratelli* prejudice standard used by the state court to deny Bilotti relief is not a correct application of *Strickland* to the circumstances of Bilotti's claim. The *Carratelli* prejudice requirement focuses on whether the defendant can establish that a seated juror was biased. Bilotti's claim, however, rests on the improper removal of a potential juror. The improper removal of a potential juror has nothing to do with the seating of a biased juror. *Strickland* must not be read to require Bilotti to prove something that is both unrelated and factually impossible to prove.

In ruling on Bilotti's § 2254 claim, the federal district court found that Bilotti did meet the prejudice standard under *Davis*, "assuming deficient performance, that deficient performance prejudiced Petitioner *under Davis* because the Fourth DCA's initial decision on the merits show that had counsel adequately preserved the issue, Petitioner would have prevailed on appeal (absent an en banc Fourth DCA or the Florida Supreme Court disagreeing-on the merits-with the Fourth DCA panel that initially reversed Petitioner's conviction). [D.E. 12] at 20. The federal district court, however, determined that *Davis* did not apply because it was not reviewing the issue of prejudice anew and owed deference to the state courts which were bound to follow the prejudice analysis of *Carratelli*. (citing

*Mobley v. Sec'y, Fla. Dep't of Corr.*, 825 F. App'x 651, 654 (11th Cir. 2020) and

*Carrateli v. Stepp*, 382 F. App'x 829 (11th Cir. 2010)).

Bilotti disagrees. Deference is not owed to a state court when an incorrect

standard is applied. *See Taylor*, 2017 WL 1160573, at *5 ("The PCR court

incorrectly framed the prejudice inquiry by asking whether there was a reasonable

likelihood that the *trial court* would have changed its decision. The proper inquiry

should have been whether there was a reasonable likelihood that Petitioner would

have prevailed *on appeal*. The Court agrees with Petitioner that the PCR court

never decided his case "on the substance of the claim advanced." Obj. to F&R at 3

(quoting *Lambert*, 393 F.3d at 967). In other words, the PCR court adjudicated a

different claim from the one Petitioner advanced. Accordingly, the Court finds that

there was no "adjudication on the merits" for § 2254(d) purposes and Petitioner's

claim is entitled to *de novo* review.").

The unpublished case law cited by the federal district court to support its

position, *Carrateli*, 382 F. App'x at 829 and *Mobley*, 825 F. App'x at 651, is not

binding precedent that prevents this Court from ruling in Bilotti's favor. *Davis*

remains good law in this Circuit and is the binding precedent regarding the claim

raised by Bilotti. Bilotti satisfied the *Strickland* prejudice as correctly provided for

in *Davis*.

The federal district court alternatively concluded that Bilotti could not establish deficient performance. [D.E. 12] at 24-25.[5] This Court should reject the district court's alternative conclusion. The Florida Supreme Court found that defense counsel failed to preserve the religion-based strike argument for appeal. The prosecution did not contest Bilotti's deficient performance argument in the state postconviction proceedings. The state court reviewing Bilotti's claim of ineffective assistance of counsel did not deny relief based on a finding that defense counsel did not perform deficiently.

To conclude that Bilotti could not establish deficient performance, the federal district court relied solely on the fact that judges (two district court of appeal judges who authored a quashed appellate decision and a dissenting Florida Supreme Court Justice) disagreed with the Florida Supreme Court's holding that defense counsel failed to preserve the argument for appeal. The fact that judges may have disagreed with a ruling in the past does not preclude a defendant from meeting the applicable standard in a federal habeas proceeding. An objective, not a subjective analysis must be used. *See, e.g., Hardy v. Chappell*, 849 F.3d 803, 826 (9th Cir. 2017) ("Applying an objective fairminded jurist standard does not mean that because any state judge found otherwise, the federal

---

[5] The federal district court stated that Bilotti did not object to this finding by the magistrate judge. [D.E. 14] at 5. This is untrue. Bilotti raised the objection in her objections to the report and recommendation. [D.E. 13] at 1-2.

court is obliged to turn away a petitioner…. It would mean that even were a state prisoner granted a writ by a state court, the government could appeal all throughout the state process and lose each step of the way but so long as one jurist on either the state appellate court or state supreme court dissented, any federal petition would be doomed to failure. Courts are to read laws in order to give them meaning, not to render them fully impotent…."). Notably, the federal district court did not objectively take issue with the Florida Supreme Court's conclusion that defense counsel failed to preserve the argument for appeal. This is probably due to the Florida Supreme Court's decision regarding defense counsel's failure to preserve the challenge being supported and sound in logic:

> The State argues that Pacchiana failed to properly preserve his religion-based objection to the State's peremptory strike and that the Fourth District erred in reversing for a new trial on that unpreserved ground. When Pacchiana initially objected to the peremptory strike of the prospective juror, he asked the State to provide a race-neutral reason for the strike. When the initial objection was made, the following exchange occurred:
>
> [DEFENSE COUNSEL]: Can we get a race neutral reason?
>
> [THE STATE]: She's a Jehovah Witness. I've never had one say, and I highlighted it, they've always said they can't sit in judgment. She never brought it up.
>
> [DEFENSE COUNSEL]: She did.
>
> [THE STATE]: No, but she put at the bottom that she's a Jehovah Witness, that gives me pause.

[DEFENSE COUNSEL FOR CO-DEFENDANT]: That's a religious based strike.

*Pacchiana*, 240 So. 3d at 806. The trial court then called the prospective juror back into the courtroom and asked her if her religion would prevent her from being impartial, and her response was, "If the evidence that's provided to me is clear cut and concise I would be able to." *Id.* After that questioning of the prospective juror, the State again defended its strike, saying, "My reason is unchanged, I don't believe I can meet her burden. I can meet my burden beyond a reasonable doubt but I cannot meet her burden and that's a concern to me and it has nothing to do with religion or anything else." *Id.* After the State explained its reason for striking the prospective juror, Pacchiana's only further argument regarding the State's reason was, "We object to her being challenged for cause, then he's going to have to come up with a race neutral reason." *Id.* at 807.

Our law regarding objections to peremptory strikes that are based on constitutionally impermissible grounds requires both a contemporaneous objection to the strike and the renewal of that objection before the jury is sworn. *See Johnson v. State*, 750 So. 2d 22, 26 (Fla. 1999); *Melbourne v. State*, 679 So. 2d 759, 764 (Fla. 1996). The State is correct that Pacchiana failed to properly preserve his religion-based objection to the State's peremptory strike. Here, Pacchiana's contemporaneous objection to the strike was predicated on the venireperson's race. Pacchiana only requested a race-neutral reason for the State's strike of the prospective juror. The issue that was raised on appeal to the Fourth District—that the venireperson was improperly struck based on her religion—was not preserved.

In *Harper v. State*, 549 So. 2d 1121, 1122 (Fla. 1st DCA 1989), Harper argued that the State violated his right to an impartial jury by using peremptory challenges to systematically exclude women from the *862 jury. The First District concluded that the issue was unpreserved because Harper only objected to the State's exercise of the challenge on the basis of race and did not articulate an objection

that the State was exercising its peremptory challenges to unconstitutionally exclude women from the jury. 549 So. 2d at 1122. Similarly here, at the time the strike was exercised, Pacchiana did not articulate an objection that the State was exercising its peremptory challenge to unconstitutionally exclude Jehovah's Witnesses from the jury. Thus, no objection to the strike as being a constitutionally impermissible religion-based strike was contemporaneously preserved in the trial court. Counsel's comment, "[t]hat's a religious based strike" was not itself a clear and specific legal objection to the constitutionality of the strike based on religion—especially because neither this Court nor the United States Supreme Court has extended *Batson* to religion.

The first time that Pacchiana clearly articulated his position that the State's strike of the prospective juror based on her being a Jehovah's Witness was a violation of the Equal Protection Clause and should be subject to the protections of *Batson* was in his written motion for mistrial and to select a new jury, filed five days after the prospective juror was excused, in which he "assert[ed] that *Batson* and *Melbourne* apply to peremptory challenges based upon religion." But by that time, the religion-based objection was untimely.

As we have stated, "it is the objection/re-objection process ... that is the decisive element in a juror-objection-preservation analysis." *Matarranz v. State*, 133 So. 3d 473, 482 (Fla. 2013). Here, although Pacchiana attempted a "re-objection" before the jury was sworn, there was no clear initial contemporaneous objection that the strike was an improper religion-based strike. Pacchiana therefore failed to properly preserve his religion-based objection to the strike by making a sufficient objection on religious grounds at the time the strike was exercised. The Fourth District erred in relying on that issue to order a new trial.

*Pacchiana*, 289 So. 3d at 861–62.

In conclusion, this Court must reverse the district court's order and find that the state court unreasonably determined that Bilotti's could not establish that defense counsel provided ineffective assistance of counsel by failing to properly preserve the issue related to the State's religion-based strike for direct appeal. Bilotti asks this Court to grant habeas relief in the form of directing her release from state custody unless granted a new trial, an opportunity to develop the claim at a hearing with the federal district court, or other appropriate relief.

II. **WHETHER, IN REJECTING BILOTTI'S CLAIM THAT TRIAL COUNSEL FAILED TO OBJECT TO THE JURY INSTRUCTIONS, THE STATE COURT REASONABLY FOUND THAT SHE DID NOT DEMONSTRATE THAT THE JURY INSTRUCTIONS WERE ERRONEOUS?**

**A. Argument on the Merits**

In Florida, to be convicted as a principal to second-degree murder, the State must establish that the principal knew the other planned to kill the victim. *Hedgeman v. State*, 661 So. 2d 87 (Fla. 2d DCA 1995); *Cornejo v. State*, 892 So. 2d 1160 (Fla. 4th DCA 2005). In *Hedgeman*, for example, the defendant appealed his conviction for second-degree murder, arguing there was insufficient evidence to sustain the conviction. 661 So. 2d at 88. The court noted that the defendant "could have only been convicted of second-degree murder as a lesser included of first-degree premeditated murder, if there was sufficient evidence to establish that he was a principal to the crime." *Id*. It then explained that establishing a defendant

as a principal to a crime committed by another requires proving that the defendant "intended the crime be committed and did some act to assist the other person in actually committing the crime." *Id*. (citations omitted). Ultimately, the court reversed the conviction, finding no evidence demonstrated that the defendant (1) knew the person who shot the victim intended to kill the victim that night, or (2) did some act to aid, encourage, or participate in the shooting of the victim. Id. at 88-89. Because such evidence was lacking, the court found that insufficient evidence existed to convict the defendant of second-degree murder as a principal:

> Absent any testimony to establish that [the shooter] planned to kill the victim that night and that Hedgeman knew of his plans, there is no evidence Hedgeman intended that the crime be committed. Further, although there was conflicting testimony regarding whether Hedgeman was in the room when [the shooter] fired the shots, there was no evidence that Hedgeman took any action prior to or during the shooting to aid, encourage, or participate in [the] shooting [of] the victim.
>
> In light of the lack of evidence to establish that Hedgman knew of [the shooter's] intent to kill the victim and that he took action to aid him in the act, there was not sufficient evidence to convict Hedgeman of second-degree murder on the principal theory.

*Id*. at 88-89.

In this case, the jury instructions on second-degree murder – which, as noted above, was a lesser included crime on Count I of the indictment, which charged the defendants with first degree murder – included the following:

As to Count 1 of the Indictment, to prove the lesser included crime of second degree murder, the State must prove the following three elements beyond a reasonable doubt:

First, that [the victim] is dead.

Second, the death was caused by the criminal act or acts of Michael Bilotti, Christin Bilotti, and John Pacchiana.

And, Third, there was an unlawful killing of [the victim] by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life.

An "act" includes a series of related actions arising from and performed pursuant to a single design or purpose.

An act is "imminently dangerous to another and demonstrating a depraved mind" if it is an act or series of acts that:

One, a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another; and, Two, is done from ill will, hatred, spite, or an evil intent; and, Three, is of such a nature that the act itself indicates an indifference to human life.

*In order to convict of second degree murder, it is not necessary for the State to prove the defendants had an intent to cause death.*

R. 34 (emphasis added).

After providing some additional instructions, the trial court provided the following "principals" instruction:

If a defendant helped another person or persons commit or attempt to commit a crime, the defendant is a principal and must be treated as if they had done all the things the other person or persons did if:

One, the defendant had a conscious intent that the criminal act be done; and, Two, the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist, or advise the other person or persons to actually commit or attempt to commit the crime.

To be a principal, the defendant does not have to be present when the crime is committed or attempted.

Now, I want to point out that this principals instruction only applies to Count 1 of the Indictment, it does not apply to conspiracy.

R. 40.

Bilotti was not the shooter, not present, and being tried as a principal. Under the circumstances of Bilotti's case, the instructions were erroneous/inadequate. Florida law does require the State to prove that Bilotti knew Pacchiana and Michael Bilotti intended to murder Rojas and Bilotti did something in furtherance of and/or assisted them to commit the murder. The instructions related to the charge of second-degree murder instruction negated this requirement and violated Bilotti's due process right to have the court correctly and intelligently instruct the jury.

Bilotti asserted in Rule 3.850 motion that defense counsel provided prejudicial ineffective assistance of counsel by agreeing to and failing to object to erroneous and legally inadequate jury instructions surrounding the charge of second-degree murder. Bilotti asserted that defense counsel's deficient performance resulted in prejudice. Had defense counsel not accepted and objected to the instructions as applied to the charge of second-degree murder, the jury would not have been given incorrect/inadequate instructions. The jury would have been instructed that to convict Bilotti of second-degree murder it was necessary for

the State to prove Bilotti knew the Michael Bilotti/Pacchiana intended to kill Rojas. Bilotti contended that there was a reasonable probability of a different outcome had the jury been correctly instructed. Indeed, after the verdict was issued, a juror sent a correspondence to the trial court which stated in pertinent part:

> It was very difficult to arrive at this verdict. I really wanted to see both sides…And I think some of the jurors were frustrated with me. (It was myself and KerryAnn that challenged the other juror's decisions.) I wanted to let you know that the verdict for Cristin was especially difficult for me. *I felt that although she led Richard to the home, she did not mean for him to be killed. I wanted a lesser charge for her, but because her intentions were to bring Rojas to a house where he could be harmed…It did not fit the manslaughter charge*.

R. 80.[6] Stated differently, the juror found Bilotti did not know that Michael Bilotti and Pacchiana intended to kill Rojas, but voted to convict of second-degree murder because the State was not required to prove Bilotti's knowledge of the co-defendants' intent to kill. This is direct evidence of what the jury was thinking during deliberations. Had this juror and the other jurors been properly instructed and understood the intent required to find a defendant guilty as a principal to second-degree murder, there is a reasonable possibility that Bilotti would have been acquitted of second-degree murder.

---

[6] The adopted State response noted that the Court should not consider or be persuaded by the juror's correspondence. Bilotti disagrees. This, however, is direct evidence of what the juror was thinking during deliberations.

The state court adopted the State's response and denied the claim as follows:

…[T]he reliance of the defendant on [Hedgeman] is misplaced, because there was no claim that the instruction on murder in the second degree was erroneous or inadequate. The court in Hedgeman reversed the conviction based on insufficient evidence, not on an erroneous jury instruction. Furthermore, the court in Hedgeman found that a conviction for murder in the second degree by a non-shooting principal could be upheld if the crime charged was a lesser included offense of murder in the first degree premeditated murder and there was sufficient evidence to prove the crime. Clearly, the defendant in this matter was charged with first degree premeditated murder, and there was sufficient evidence to prove the claim as found by the jury. In fact, the issue of sufficiency of the evidence was raised on appeal by the defendant, addressed on the merits by the State, and eventually rejected when the judgment and sentence was affirmed by the Fourth DCA after remand from the Florida Supreme Court.

R. 415.[7]  In essence, the state court denied the claim because it found Bilotti failed to demonstrate that the jury instructions were erroneous by misplacing reliance on *Hedgeman*.

The state court's decision to deny relief was unreasonable.  Bilotti did not misplace reliance on *Hedgeman.  Hedgeman* does not hold "that a conviction for murder in the second-degree by a non-shooting principal could be upheld if the crime charged was a lesser included offense of murder in the first degree

---

[7] The adopted State response noted that Bilotti raised related issues on direct appeal and they were affirmed by the appellate court without explanation. R. 414-416.  The state court, nevertheless, addressed the issue on the merits, "Defendant is not entitled to relief in this matter, as her claims are without merit." R. 419.

premeditated murder and there was sufficient evidence to prove the claim."[8]  To

the contrary, *Hedgeman*, and also *Cornejo v. State*, 892 So. 2d 1160 (Fla. 4th DCA

2005), hold that to sustain a second-degree murder conviction as a principal for a

murder committed by another, the State must prove that the defendant knew the

person that killed the victim intended to kill the victim and did some act to assist

the other person actually committing the crime.  Accordingly, the State was

required to prove Bilotti knew Pacchiana and Michael Bilotti intended to murder

Rojas and Bilotti did something in furtherance of and/or to assisted them to commit

the murder.   The jury could not be instructed and be led to believe that the

prosecution did not need to establish that Bilotti knew of the co-defendants' intent

to kill Rojas.   The jury being misled as a result of defense counsel ineffective

---

[8] The district court agreed that the state court misrepresented the *Hedgeman* decision when finding Bilotti's reliance to be misplaced.  As stated in footnote 18:

> The State's response [which the state court fully adopted] characterized *Hedgeman* as finding "that a conviction for murder in the second degree by a non-shooting principal could be upheld if the crime charged was a lesser included offense of murder in the first degree premeditated murder and there was sufficient evidence to prove the crime." R. 415 (emphasis added). However, what the Hedgeman court said was that the defendant "could have only been convicted of second-degree murder as a lesser included of first-degree premeditated murder, if there was sufficient evidence to establish that he was a principal to the crime." *Hedgeman*, 661 So. 2d at 88 (emphasis added).

assistance is evidenced by the juror's post-verdict correspondence that "I felt that although she led Richard to the home, she did not mean for him to be killed."

The federal district court denied Bilotti's § 2254 claim because it found that "it is not clear that *Hedgeman* establishes that the jury instructions in this case were erroneous, and the state court was not unreasonable in finding Plaintiff's reliance on *Hedgeman* misplaced" "because *Hedgeman* reversed a conviction based on insufficient evidence, whereas here, Petitioner only alleges counsel failed to object to an erroneous jury instruction." The distinction relied made by the district court makes little sense. If Florida law establishes that evidence is insufficient to sustain a conviction, it then must follow that a jury cannot be instructed that it can convict a defendant based on insufficient evidence.

The district court noted that it was additionally persuaded by Justice Pariente's dissent in *Jamerson v. State*, 677 So. 2d 1299 (Fla. 4th DCA 1996), which relied on the decision of *Wright v. State*, 402 So. 2d 493 (Fla. 3d DCA 1981), to find that Florida law permitted Bilotti to be convicted of second-degree murder as a principal even if she did not know of her co-defendants' intent to kill the victim. A dissent, however, is not binding precedent in the State of Florida and, therefore, cannot be used to assess Bilotti's claim of ineffective assistance of counsel. *St. Fort v. Post*, 902 So. 2d 244, 245 (Fla. 4th DCA 2005) (a written dissent has no precedential value**.**). Moreover, the *Wright* decision relied

upon by Justice Pariente in her dissent is distinguishable. Unlike in this case, Wright knew of the co-defendant's intent to kill the victim and was present when they both shot the victim.[9] Any language contained in the *Wright* decision that addresses an immaterial circumstance to the decision is dicta and of no precedential value in the state of Florida. *Cirelli v. Ent*, 885 So. 2d 423, 427 (Fla. 5th DCA 2004) (a statement in a judicial opinion that is "unnecessary to the resolution of the issue before the court" constitutes dicta and is "not controlling judicial precedent."). Notably, *Hedgeman* was decided after *Jamerson* and *Wright*. *Hedgeman*, not Justice Pariente's dissent in *Jamerson* or the decision of *Wright*, is applicable and controls the issue at hand pursuant to Florida law. The state court unreasonably found that Bilotti misplaced reliance on *Hedgeman*.

In footnote 20 of the adopted report and recommendation, federal district court additionally noted that defense counsel could not be found ineffective because the jury instructions at issue were consistent with the standard jury instructions. This alternative conclusion must be rejected. Florida law provides that a defense attorney can be ineffective if they fail to object to inapplicable standard jury instructions. *See, e.g., Allison v. State*, 179 So. 3d 470 (Fla. 4th DCA

---

[9] The *Wright* court cites to *McClamrock v. State*, 327 So. 2d 780 (Fla. 3d DCA 1975). *McClamrok* is also distinguishable. In *McClamrock*, the appellate court upheld a second-degree murder conviction of defendant who, knowing that McClamrock, her husband, intended to kill her ex-husband, Stevens, went with McClamrock to Stevens' house and asked Stevens to step outside where he was killed by McClamrock.

2015) (defense counsel ineffective for failing to object to inapplicable standard jury instruction on principal); *Stoute v. State*, 987 So. 2d 748 (Fla. 4th DCA 2008) (defense counsel ineffective for failing to object to inapplicable standard jury instruction of forcible felony).

In conclusion, this Court must reverse the district court's denial of habeas relief and find that the state court unreasonably determined that Bilotti's could not establish that defense counsel provided ineffective assistance of counsel by failing to argue that the jury was erroneously instructed on the charge of second-degree murder. Bilotti asks this Court to grant habeas relief in the form of directing her release from state custody unless granted a new trial, an opportunity to develop the claim at a hearing with the federal district court, or other appropriate relief.

## CONCLUSION

Based upon the foregoing arguments and legal authority, Petitioner-Appellant, **CHRISTIN BILOTTI**, respectfully requests that this Court to grant habeas relief in the form of directing her release from state custody unless granted a new trial, an opportunity to develop the claim at a hearing with the federal district court, or other appropriate relief.

DATED this 6th day of November, 2023.

Respectfully submitted,

*/s/ Matthew R. McLain*
Matthew R. McLain, Esquire
Florida Bar No. 98018
MCLAIN LAW, P.A.
2170 West State Road 434
Suite 216
Longwood, Florida 32779
(T) 407.792.3930
(F) 407.613.2757
Matthew@McLainLaw.com
*Counsel for Petitioner-Appellant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of November, 2023, I filed the foregoing with the Clerk of the Court and served opposing counsel with a copy via CM/ECF.

*/s/ Matthew R. McLain*
Matthew R. McLain, Esquire

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing brief is typed in Times New Roman style with a 14-point pitch and that this brief and the initial brief combined comply with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B). This brief contains 11,601 words.

*/s/ Matthew R. McLain*
Matthew R. McLain, Esquire